HELENA M. WELLS ET AL., EXECUTORS, v. ALEXANDER
RODGERS.

[See 44 Mich. 411; 50 Mich. 294.]

*Railroads—Consolidation of—Notice by secretary of each road of meeting of
stockholders, required by section 2445, Comp. Laws 1871—Need only be
published in counties through which road runs—Date of instrument—
Immaterial that it is prior to the action authorizing its execution, if not
signed until after such action—Notice of meeting of directors to pass
upon proposed consolidation—If majority present and voting in the
affirmative (being a quorum), agreement valid without proof of notice to
absentees, if want of notice does not affirmatively appear—Burden of
proof to show non-notice rests on those denying legality of meeting for
want of it—Assignment of stock subscription after consolidation—If in
name of one of the old companies, may be ratified by consolidated cor-
poration.*

1. Section 2445, Comp. Laws of 1871 (How. Stat. § 3343), requires a
   *separate* publication by *each* railroad company of a notice of the meet-
   ing of its stockholders to sanction the agreement of the directors of
   the *two* companies for consolidation, which notice must be signed by
   its secretary, and need only be published in the counties through
   which *his* company's road runs.

2. Where an agreement for the consolidation of two railroad companies,
   under section 2445, Comp. Laws 1871, was dated *prior* to the meet-
   ing of the directors of *one* of said companies at which its president
   was authorized to sign said agreement, but the record disclosed that
   it was not signed and sealed by such president until *after* such meeting,
   the prior dating does not affect the validity of the agreement.

3. Where the record shows that a majority of the directors of a railroad
   company (being a quorum) were present at a meeting held to act
   upon the proposed consolidation of its railroad with that of another
   company, and *all* voted to enter into the statutory agreement therefor,
   and the record fails to show the giving of any notice to the absent
   directors of the meeting, but it does not appear affirmatively that
   such notice was not given,—
   *Held,* that the law will presume that the proper notice was given,
   and that the burden of proof is upon those who deny the regularity
   of the meeting for want of notice, to prove that notice was not given.

4. Where the statute (Comp. Laws 1871, § 2445) does not require a notice
   to be given to the directors of a railroad company of a meeting of the
   board to act upon a proposed agreement for consolidation, and it is

not shown that the articles of association or by-laws of the company provide for the manner of such notice, or that any should be given, a meeting of a *majority* of the directors, being a *quorum*, held without such notice, and their unanimous vote in favor of executing the consolidation agreement, is valid.

5. Where, *after* the agreement for the consolidation of two railroad companies (under section 2445, Comp. Laws 1871) had been consummated, an assignment of a stock subscription held by *one* of the companies was made by the assistant treasurer of the *consolidated* company, by direction of *its* president, to a third party, but in such assignment *one* of the companies was named as the assignor,—

*Held*, in a suit brought by the assignee on such stock subscription, that by virtue of the consolidation proceedings the subscription was transferred to the consolidated corporation, and became its property; but it appearing that before the commencement of said suit the board of directors of the consolidated company ratified such assignment, *held*, that this action divested the new corporation of any claim to said subscription, and vested the title and ownership of the same in the assignee.

Error to Muskegon. (Russell, J.) Argued February 9, 1886. Decided April 15, 1886.

Assumpsit. Defendant brings error. Affirmed. The facts are stated in the opinion.

*C. C. Chamberlain*, for appellant :

A dissenting stockholder of one of two consolidating corporations is not bound by a *de facto* consolidation : *Swartwout v. Mich. Air Line R. R. Co.*, 24 Mich. 389 ; *Peninsular Ry. Co. v. Tharp*, 28 Mich. 506 ; *Mansfield, Coldwater & Lake Mich. R. R. Co. v. Drinker*, 30 Mich. 125 ; *Tuttle v. Mich. Air Line R. R. Co.*, 35 Mich. 247 ; *Rodgers v. Wells*, 44 Mich. 411.

The assignment, exhibit " B ", could not be reformed in a court of law so as to be something which it did not purport to be. On its face it was not the assignment declared upon, and no other was shown. It should not therefore have been admitted in evidence. Comstock made exhibit " B " what it was and as it was, and the directors, at the Boston meeting, June 7th, 1878, assumed, not to repudiate, but to confirm what Comstock had done. The resolution adopted at the meeting cannot be construed to be anything but that which by its terms it purports to be. It is not ambiguous. It was wholly incompetent to show the assignment declared upon, and irre-

levant—not having been alleged by the declaration : *Rodgers v. Wells*, 44 Mich. 411.

*J. B. McMahon*, for plaintiffs :

The statute requires separate notices of the meeting of the stockholders of a railroad company to sanction an agreement for consolidation, under Comp. Laws 1871, § 2445 (How. Stat. § 3343) ; and they should be signed by the respective secretaries, not *jointly*, but *each* his *own* notice.

The date of an instrument is not vital to the contract, nor is fixing the maturity of some liability an essential part thereof; and it may be varied or corrected by parol. The instrument will take effect from the date of its delivery : 1 Greenleaf Ev. (13th ed.) § 285, and notes: *Hall v. Cazenove*, 4 East. 477 ; *Churchill v. Bailey*, 13 Maine, 64 ; *Joseph v. Bigelow*, 14 Cush. 82 ; *Lamore v. Frisbie*, 42 Mich. 186.

On the plainest principles of estoppel, legal and equitable, appellant cannot ask the court to relieve him of his undertaking, it appearing that he must have been present at the stockholders' meeting and voted for the consolidation : *Swartwout v. Mich. Air Line R. R. Co.*, 24 Mich. 398 ; *Monroe v. Ft. Wayne, Jackson & Saginaw R. R. Co.*, 28 Id. 272 ; *Danbury & Norwalk R. R. Co. v. Wilson*, 22 Conn. 435 ; *Clark v. Monongahela Nav. Co.*, 10 Watts, 364 ; *Everhart v. West Chester & Phil. R. R. Co.*, 28 Penn. St. 339 ; *Greenville & Col. R. R. Co. v. Coleman*, 5 Rich. 143.

MORSE, J. This is an action of assumpsit brought to recover the amount due upon two subscriptions made by the defendant to the capital stock of the Muskegon & Big Rapids Railroad Company. The first subscription, of thirty shares, was made in the articles of association. The second was a later, independent subscription, and was abandoned by plaintiffs on the trial.

The claim on the part of the plaintiffs to support their action was that said Muskegon & Big Rapids Railroad Company and the Chicago & Michigan Lake Shore Railroad Company were consolidated, after such subscription on the part of defendant, the corporation thus formed taking the name of said latter-mentioned company ; that said consolidated company assigned said subscription to one Ephraim Mariner,

who duly assigned the same to Daniel L. Wells. Plaintiffs are the executors of said Wells, who has died since the commencement of suit.

The declaration in the cause was filed on the twenty-third day of July, 1878, and the case has been twice before in this Court, and is reported in 44 Mich. 411; 50 Mich. 294.

Upon the last trial in the circuit court no evidence was offered upon the part of the defendant. The court directed a verdict for plaintiffs.

The objections urged upon the trial, and submitted here, are to the validity of the alleged consolidation of the two companies, and the assignment of the stock subscription under which plaintiffs claim.

The defendant was active in organizing the Muskegon & Big Rapids Railroad Company for the purpose of building a road from Muskegon to Big Rapids, and subscribed thirty shares of one hundred dollars each. It seems also that he was active in bringing about the consolidation of the companies. He was present at the meeting of the board of directors of the Muskegon & Big Rapids Company, and voted to instruct its president to enter into the agreement for consolidation substantially as it was entered into, and offered a resolution, which was adopted, calling in the unpaid balance of the subscribed stock, and fixing the dates of payment of the same, and the amounts or per cent. to be paid at such dates. This meeting of the directors was held on the twenty-sixth day of July, 1872.

An agreement to consolidate was prepared and dated July 27, 1872, which agreement in form complied with the statute, and was signed by the president of the respective corporations, with the corporate seals of both companies annexed thereto.

The board of directors of the Chicago & Michigan Lake Shore Company, at a meeting held on the first day of August, 1872, directed and authorized its president, J. F. Joy, to enter into this agreement in their behalf, which he did.

Notices were then given to the stockholders of each company of meetings of said stockholders, to be held separately

on the fifteenth day of October, 1872, to ratify and sanction such agreement. These notices were by publication under the statute, and signed by the secretaries of the respective companies.

Meetings of the stockholders of each company were held on that day separately, at which meetings the agreement was unanimously sanctioned and approved. The stock owned and held by defendant was voted, either in person or by proxy, in favor of the consolidation.

The objections, and the only ones, urged against the action of the stockholders, and impugning the validity of their approval of the agreement, are that the notices in each case should have been signed jointly by the secretaries of the two companies, instead of separately, and that the notice calling the stockholders of the Chicago & Michigan Lake Shore Company was not published in the counties of Mecosta and Newaygo.

It seems that the Muskegon & Big Rapids Railroad ran, or was surveyed to run, through Muskegon, Mecosta, and Newaygo counties, and the other road through the counties of Oceana, Muskegon, Kent, Ottawa, Allegan, Van Buren, and Berrien.

Under the statute which requires the meetings of these stockholders to be held separately and apart from each other, we think the publication required is also intended to be separate, signed by the secretaries separately, and to be published only in the counties through which each road runs. It was not necessary to publish the notice of the meeting of the stockholders of the Chicago & Michigan Lake Shore Company in the counties of Mecosta and Newaygo, through which the line of its road did not pass. There was no objection to the sufficiency of the proof of due publication of the notices under the statute, save those noted. Consequently it must be considered that the meetings were regularly called and held under the statute, and in substantial compliance therewith.

No real objection is urged against the validity of the action of either the directors or stockholders of the company to

which defendant belonged, and in which proceedings he took a prominent and consenting part.

But it is claimed that Mr. Joy, the president of the other company, entered into this agreement before he was authorized to do so by the directors of said company. This is urged for the reason that the agreement bears date the twenty-seventh of July, while the directors did not authorize such action until August 1 of the same year.

But the record shows clearly enough that, although dated July 27, and probably signed and sealed by the president of the Muskegon & Big Rapids Company on that day, it was not signed and sealed by Mr. Joy until after the action of the directors of his company. There is therefore no force in this objection.

It is also urged that there was no proof of any notice to the directors of the Chicago & Michigan Lake Shore Company of the meeting of August 1, 1872, and a motion was made upon the trial to strike from the case the proceedings of the same for that reason, which motion was denied.

The record shows that a majority of the directors were present at such meeting, and that every director present voted to enter into this agreement. Under the statute then in force a majority of the directors constituted a quorum for the transaction of business. There was no proof of notice; yet it did not appear affirmatively that there was a want of notice. The burden of proof is upon those who deny the regularity of a meeting for want of notice, to prove it: *Sargent v. Webster*, 13 Metc. 504. The law presumes, in the absence of any proof to the contrary, that the proper notice was given when a quorum are present at the meeting: Rorer R. R. 191; *Mutual Fire Ins. Co. v. Sortwell*, 8 Allen, 217; *Com. v. Woelper*, 3 Serg. & R. 29.

No notice of the meeting being required by the statute, and no showing that the articles of association or the by-laws of the company provided the manner of notice, or that there should be any, and a quorum being present, and all voting affirmatively, as shown by the record, we think the meeting was legally held, and its action valid, without proof of notice

to the absent members: *Edgerly v. Emerson*, 23 N. H. 555; *State v. Smith*, 48 Vt. 266.

The assignment to Mariner is objected to as not being the assignment declared upon. It was declared upon as an assignment made by the consolidated company, and it is claimed that by its terms it purports to be and is the assignment of the Muskegon & Big Rapids Company.

The stock subscription of the defendant, as it appears from the testimony, was assigned by the assistant treasurer of the consolidated company, upon receipt of a letter from the president of that company directing him to deliver notes of various parties in his possession, to the amount of $50,000, to D. L. Wells & Co.

In the instrument of assignment the assistant treasurer, Mr. Comstock, uses the words "the Muskegon & Big Rapids Railroad Company hereby sells, assigns," etc.; and signs the same, "E. G. COMSTOCK, Assistant Treasurer." This was in November, 1873, at which time there was no Muskegon & Big Rapids Company in existence, the consolidation having taken place, and said company being merged thereby in the consolidated company, under the name of the Chicago & Michigan Lake Shore Railroad Company. By the statute, the consolidation proceedings being valid, this stock subscription had been transferred to the consolidated corporation by the force and virtue of such proceedings, and was its property: How. Stat. § 3344; Comp. Laws 1871, § 2348.

The assignment was undoubtedly meant to be an assignment from and by the new corporation, and before the commencement of this suit, and on the seventh day of June, 1878, the board of directors of the consolidated company ratified and confirmed the assignment made by the said Comstock as their own. We think this action effectually divested the corporation of any claim to this subscription, and vested the title and ownership of the same in said Mariner, or rather in his assignee, Daniel L. Wells, as he assigned to Wells in April, 1878.

We see no error in the proceedings in the court below. The fact that the plaintiffs were allowed to prove the exist-

ence and operation of the new corporation *de facto* could do no harm, as the consolidation was valid in law. The court correctly instructed the jury to find a verdict against the defendant.

His defense was entirely a technical one, without any merit in the technicalities raised. In view of his joining and acquiescing in every step of the consolidation proceedings on the part of his own company, and withal an active participant therein, there could be but little, if any, equity in his attempt, years afterwards, to avoid his subscription by picking flaws in the proceedings of the company in which he had no interest, and with whose action its own stockholders appear to be satisfied.

The judgment of the circuit court for the county of Muskegon is therefore affirmed, with costs.

CAMPBELL, C. J. and SHERWOOD, J. concurred. CHAMPLIN, J. did not sit in this case.