## JACOB KOLKA *vs.* ANDY JONES.

Opinion filed April 29th, 1897.

**Malicious Prosecution—Civil Suit.**

> An action will lie in this state for the malicious prosecution without probable cause of a civil suit, although the person of the defendant therein was not arrested or his property interfered with; and although no other special circumstances are shown to exist.

**Attorney's Fees as Damages.**

> In such an action the plaintiff may recover, as part of his damages, all fees paid his attorney in the defense of the original action, if such fees are shown to be reasonable. But that they were reasonable must be proved.

**Prima Facie Evidence—Want of Probable Cause.**

> The voluntary dismissal of a civil action by the party controlling the same is *prima facie* evidence of want of probable cause.

**Malice Alone Insufficient.**

> No amount of malice, however great, will sustain the action, if want of probable cause is not shown.

**Probable Cause—Question of Law.**

> Probable cause is a question of law, when the facts are undisputed.

**When a Question for Jury.**

> But whether, even if the facts show probable cause, the plaintiff in the action believed that he had probable cause, is a question of fact for a jury, if the evidence is not conclusive in his favor on that point.

**Conclusive Evidence of Want of Probable Cause.**

> The commencement by a party in his own name of an action upon a claim which he holds only for collection, and which he knows he has no title to, the suit having been instituted after he had received reliable information that the claim had been paid to the owner thereof by the debtor, is, as a matter of law, conclusive evidence of want of probable cause for the institution of such action.

**Malice May be Inferred.**

> Malice may ordinarily be inferred by a jury from want of probable cause.

**Motion to Strike Out Evidence Not Proper Practice.**

> Where evidence has been improperly received, the correct practice is for the litigant against whom it was offered to request the court to instruct the jury to disregard it, and not to ask that it be stricken out, although subsequent developments in the case demonstrate its incompetency.

**Motion for Instructions or for Directed Verdict.**

> Where evidence is competent so far as it goes, but is not sufficient to establish a case, or a right to certain damages, it is not error to refuse to strike out such evidence. The party should ask for a directed verdict, or move the court to charge the jury that the plaintiff has failed to make out a case or to establish a right to recover the particular damages, as the case may be.

**Objection Must Point Out Grounds Relied Upon.**

> In stating an objection to evidence or the ground of a motion, the particular objection or ground relied on must be specified, unless it is one which could not possibly be obviated. If it is not so specified, the point will not be considered in this court, if it could possibly have been obviated on the trial.

Appeal from District Court, Walsh County; *Sauter*, J.

Action by Jacob Kolka against Andy Jones. Judgment for plaintiff, and defendant appeals.

Affirmed.

*John A. Sorley,* (*George A. Bangs,* of counsel,) for appellant.

No action will lie for the prosecution of a civil action with malice and without probable cause when there has been no arrest or seizure of the property of the defendant, and no special injury sustained. *Potts* v. *Imlay*, 4 N. J. L. 377, 7 Am. Dec. 603; *Meyers* v. *Waller*, 64 Pa. St. 289; *Kramer* v. *Stack*, 10 Watts, 115; *Eberly* v. *Rupp*, 90 Pa. St. 259; *MacNamee* v. *Minke*, 49 Md. 122; *Wetmore* v. *Mellinger*, 18 N. W. Rep. 870; *Mitchell* v. *Ry. Co.*, 75 Ga. 398; *Ely* v. *Davis*, 15 S. E. Rep. 878; *Terry* v. *Davis*, 18 S. E. Rep. 493; *Bishop* v. *Am. P. Co.*, 51 Fed. Rep. 272; *Rice* v. *Day*, 51 N. N. Rep. 464; *Gorton* v. *Brown*, 27 Ill. 489; *Lucy* v. *Ins. Co.*, 31 Ohio L. J. 22; Cooley on Torts 189; Addison on Torts § 863. To sustain the action there must be both a malicious motive and want of probable cause. *C. C. Live Stock, etc. Co.* v. *Butchers' Union*, 120 U. S. 141, 30 L. Ed. 614. Before attorneys fees can be allowed as damages there must be proof that they were actually incurred and their value must be shown. *Mitchell* v. *Davies*, 53 N. W. Rep. 363.

*DePuy & DePuy,* for respondent.

An action lies for the malicious prosecution of a civil action where neither the property nor personal rights of the defendant have been interfered with. *Lipscomb* v. *Shofner*, 33 S. W. Rep. 818; *McCardle* v. *McLinley*, 86 Ind. 538, 44 Am. Dec. 343; *Lochenour* v. *Sides*, 57 Ind. 360, 26 Am. Rep. 58; *McPherson* v. *Runyon*, 43 N. W. Rep. 329; *Closson* v. *Staples*, 42 Vt. 209, 1 Am. Rep. 316; *Whipple* v. *Fuller*, 11 Conn. 582, 29 Am. Dec. 330; *Marburg* v. *Smith*, 11 Kan. 554; *Cox* v. *Taylor's Adm'r.*, 10 B. Monroe 17; *Pangburn* v. *Bull*, 1 Wend. 345; *Easton* v. *Bank*, 66 Cal. 123; *Woods* v. *Finnell*, 13 Bush. 629; *Allen* v. *Cadman*, 139 Mass. 136; *Page* v. *Cushing*, 38 Mo. 523; *Frowman* v. *Smith*, 12 Am. Dec. 265 n; *Smith* v. *Burris*, 106 Mo. 94; *Vanduzor* v. *Linderman*, 10 Johns 106; *Hoyt* v. *Macon*, 2 Colo. 113; *Hall* v. *Laming*, 31 N. J. L. 321, 86 Am. Dec. 213; *Autcliff* v. *June*, 45 N. W. Rep. 1019; *Pope* v. *Pollock*, 46 Ohio St. 367; *Brand* v. *Hinchman*, 36 N. W. Rep. 664; *O'Neill* v. *Johnson*, 55 N. W. Rep 601; *Brown* v. *Cope*, 90 Mo. 377. Malice does not mean hatred or ill will, but includes ulterior or improper motive. *Spear* v. *Hill*, 30 N. W. Rep. 506; *Johnson* v. *Ebberts*, 11 Fed. Rep. 129. It may be inferred from want of probable cause. *Louisville, etc. R. Co.* v. *Hendricks*, 40 N. E. Rep. 82; *Betting* v. *Ten Eyck*, 82 Ind. 421; *Heap* v. *Parish*, 3 N. E. Rep. 549; *Edgeworth* v. *Carson*, 5 N. W. Rep. 282; *Wertheim* v. *Altschuler*, 12 N. W. Rep. 107; *Murphy* v. *Hobbs*, 5 Pac. Rep. 119. Appellant's motion to strike out all evidence in regard to attorneys fees as not proper, incompetent, irrelevant and immaterial was too general. It does not suggest any opposition to the quality of the evidence, and the assignment of error based upon this objection cannot be considered. *Springer L. Co.* v. *Falk*, 59 Fed. Rep. 707; *Bright* v. *Ecker*, 69 N. W. Rep. 824; *Levine* v. *Ins. Co.*, 68 N. W. Rep. 855; *Hauver* v. *Bell*, 36 N. E. Rep. 6; *Ladd* v. *Sears*, 9 Oreg. 244; *Hooper* v. *Ry. Co.*, 33 N. W. Rep. 314; *Taylor* v. *Wendling*, 24 N. W. Rep. 40; *Mfg. Co.* v. *Pinch*, 66 N. W. Rep. 340; *Caledonia G. M.* v. *Noonan*, 3 Dak. 189, 14 N. W. Rep. 426; *Lungerhausen* v. *Crittenden*, 61 N. W. Rep. 270; *Perkins* v *Buaas*, 32 S. W. Rep. 240; *Krolik* v. *Graham*, 31 N. W. Rep. 307.

CORLISS, C. J. The plaintiff has recovered judgment against the defendant in an action for malicious prosecution of a civil suit. At the threshold of the case we are met with the contention that for the malicious institution and prosecution of a civil action without probable cause there is no remedy, unless the person of the defendant in such action has been arrested or his property seized therein, or unless there exists special circumstances removing the case from the category to which belong ordinary civil actions. On this very interesting question we find the decisions in hopeless conflict. In this jurisdiction it is an open question, and we shall therefore settle it upon principle and in accordance with the weight of argument, without reference to the number of authorities which can be arrayed upon the opposite sides, respectively, of this controversy. It may not be amiss, however, to remark that in our opinion the scales in which are balanced the relative weight of authority on this point have turned, and that now it is no longer true, as erstwhile it was, that the adjudications preponderate in favor of the English rule, that in the absence of the arrest of the person or of the seizure of property, or of other special circumstances, the successful defendant has no remedy, despite the fact that his antagonist proceeded against him maliciously and without probable cause. Favoring the English doctrine, we find the following authorities: *Potts* v. *Imlay*, 4 N. J. Law, 377; *Mayer* v. *Walter*, 64 Pa. St. 289; *Eberly* v. *Rupp*, 90 P. St. 259; *McNamee* v. *Minke*, 49 Md. 122; *Wetmore* v. *Mellinger*, (Iowa) 18 N. W. Rep. 870; *Mitchell* v. *Railroad*, 75 Ga. 398; *Ely* v. *Davis*, (N. C.) 15 S. E. Rep. 878; *Terry* v. *Davis*, (N. C.) 18 S. E. Rep. 943; *Rice* v. *Day*, (Neb.) 51 N. W. Rep. 464; *Gorton* v. *Brown*, 27 Ill. 489. Opposed to the English rule, we marshal decisions from the States of Connecticut, New York, Minnesota, Kansas, Kentucky, Missouri, Colorado, Ohio, Louisiana, Michigan, Tennessee, Indiana, Vermont, Massachusetts, and California: *Lipscomb* v. *Shofner*, (Tenn. Sup.) 33 S. W. Rep. 818; *McCardle* v. *McGinley*, 86 Ind. 538; *Lockenour* v. *Sides*, 57 Ind. 360; *McPherson* v. *Runyon*, (Minn.) 43 N. W. Rep. 392; *Closson* v.

*Staples*, 42 Vt. 209; *Whipple* v. *Fuller*, 11 Conn. 582; *Marbourg* v. *Smith*, 11 Kan. 554; *Cox* v. *Taylor's Adm'r.*, 10 B. Mon. 17; *Pangburn* v. *Bull*, 1 Wend. 345; *Eastin* v. *Bank*, 66 Cal. 123, 4 Pac. Rep. 1106; *Woods* v. *Finnell*, 13 Bush. 629; *Allen* v. *Codman*, 139 Mass. 136, 29 N. E. Rep. 537; *Smith* v. *Burrus*, 106 Mo. 94, 16 S. W. Rep. 881; *Johnson* v. *Meyer*, 36 La. Ann. 333; *Hoyt* v. *Macon*, 2 Colo. 113; *Brady* v. *Erwin*, 48 Mo. 533; *Antcliff* v. *June*, (Mich.) 45 N. W. Rep. 1019; *Pope* v. *Pollock*, 46 Ohio St. 367, 21 N. E. Rep. 356; *Brand* v. *Hinchman*, (Mich.) 36 N. W. Rep. 664; *O'Neil* v. *Johnson*, (Minn.) 55 N. W. Rep. 601; *Dolan* v. *Thompson*, 129 Mass. 205; *Sartwell* v. *Parker*, 141 Mass. 405, 5 N. E. Rep. 807.

In the case at bar it appears that the defendant in the civil actions alleged to have been prosecuted maliciously and without probable cause was not arrested, and that his property rights were not in any manner interfered with. The suits complained of consisted of three successive actions instituted in justice's court upon the same claim, each case being voluntarily dismissed by the defendant herein when the day for trial arrived. Without at this point adverting more particularly to the facts, we will dispose of the question whether the action will lie, assuming the suit to have been maliciously brought without probable cause. We wish to settle the law in this state, not upon the peculiar features of this case, but upon the broad basis that the malicious prosecution of a civil action without probable cause is a legal wrong, for which the law will afford redress, without reference to any inquiry touching the seizure of property, the arrest of the person, or other special circumstances. Before the statute of Marlbridge (52 Hen. III.) an action for the malicious prosecution without probable cause of a mere civil action would lie. *Closson* v. *Staples*, 42 Vt. 209–214, *Lockenour* v. *Sides*, 57 Ind. 364; *Lipscomb* v. *Shofner*, (Tenn. Sup.) 33 S. W. Rep. 818; *Pope* v. *Pollock*, 46 Ohio St. 367, 21 N. E. Rep. 356; 14 Am. & Eng. Enc. Law, 32. Why this rule should have been departed from after the act of 52 Hen. III. had been passed, is apparent from the language of

that act. It gave to the defendant who had prevailed in the cause, not merely his costs, but also his damages, and, to make apparent the purpose of parliament to substitute this remedy for the action for malicious prosecution, these costs and damages were given only in actions which were malicious, and not in all actions generally. *Railroad Co.* v. *McFarland*, 44 N. J. Law, 674-676. Subsequent legislation in England shows that the statute of Marlbridge was enacted, not as a general law regulating costs, but to afford a summary remedy to the successful defendant in place of the existing right of action to recover his damages on account of the malicious prosecution of a civil action against him. The statute of Gloucester (6 Edw. I. c. 1) gave the defendant costs where he recovered damages, and finally, by the act of 23 Hen. VIII. c. 15. the defendant was given costs in all cases in which he was successful, whether he recovered damages or not, provided the case was one in which the plaintiff could have recovered costs had he been the prevailing party. *Railroad Co.* v. *McFarland*, 44 N. J. Law, 674-676. The act of the British parliament which was held to take away the existing cause of action for damages for the malicious prosecution of a civil suit was an act which in terms was limited to cases of that kind; and when it is remembered that it gave the defendant, not merely his costs, but also his damages, it is obvious that the statute was framed to give the successful defendant his remedy in the very case in which he was maliciously prosecuted, instead of compelling him to seek redress in an independent action. Between such legislation and the statutory enactments of this country on the subject of costs there is the widest possible difference. The statute of Marlbridge was limited to civil actions maliciously prosecuted, and gave the defendant the damages he had suffered because of such perversion of the forms and remedies of the law, whereas the statutes regulating costs on this side of the water are not restricted to actions in which the motive prompting the litigation was unjustifiable, but are intended to apply to all cases, to the end that some indemnity to the other suitor may be afforded

in every case, independently of the state of mind of the person bringing the suit, on the question whether he had reasonable ground for believing that the action could be maintained; leaving the remedy for a perversion of legal machinery to the common-law maxim that for every wrong the law will give legal redress. General statutes regulating costs make no discrimination between the honest suitor, who, having a valid claim, may yet fail, for some reason, to establish it in court, and the malignant persecutor and harasser of a citizen, who, by his abuse of legal forms, causes heavy damage to such citizen, in property, reputation, and business prospects, by the unfounded suit, which he who institutes it knows full well he cannot maintain. Each must pay the statutory costs, and the same rule measures the liability of each for such costs. That our meagre bill of costs was intended to recompense the victim of the malicious prosecution of a civil suit is, to our minds, unthinkable. It is true that our statute gives the successful suitor a right to recover some trifling items of costs, and certain specified disbursements, as indemnity; but it is indemnity for the defense (in the case of a defendant) of an action, without reference to the question whether there has been a malicious perversion of legal remedies. If it was enacted to cover cases of an abuse of legal machinery, then it is evident that all remedy for such an abuse was intended to be withheld; for, in such a view of the statute, he who lawfully uses and he who maliciously perverts the right to sue would stand upon precisely the same footing with respect to the question of liability for their respective acts. Even when the plaintiff has acted in the utmost good faith the defendant will often suffer, on account of the suit, damages which taxable costs will not even approximately compensate. But it is the policy of the law not to throw around the right of the citizen to appeal to the courts for redress such risks that fear of the possible consequences will deter him from asserting a claim he honestly deems himself entitled to enforce. In ordinary cases the injury a defendant suffers, beyond the slight indemnity which statutory costs afford him, is one of the

many inevitable burdens which men must sustain under civil government. He is forced to bear it for the public good. A wise policy requires that the honest claimant should not be frightened from invoking the aid of the law by the statutory threat of a heavy bill of costs against him in case of defeat. But certainly no such policy demands that malice should, by the assurance of protection in advance, be encouraged to vex, damage, and even ruin a peaceful citizen by the illegal prosecution of an action upon an unfounded claim.

We will briefly notice the arguments adduced by courts in this country to support here the English rule. Ignoring the differences between the phraseology and manifest purpose of the statute regulating costs in this country, and the letter and obvious spirit of the statute of Marlbridge, the assertion is not infrequently made that costs afford full indemnity, though the suit be instituted without probable cause, and prosecuted in a spirit of malice. To our minds, this argument does not rise to the dignity of sophistry. The claim that the payment of statutory costs will in all cases, or even in any case, make amends for the damage inflicted by the malicious prosecution of a civil suit, is palpably false. To hold that, because the dishonest suitor has been required to give his successful antagonist some trifling measure of indemnity, therefore it follows that the purpose is disclosed to withhold a remedy for a grievous wrong, which on a fundamental maxim of British jurisprudence, should not be withheld, is, to our minds, a violent stretch of imagination. When the argument of expediency is advanced, it suffices to reply to it by pointing to those states in which it has long been the rule that an action will lie for the malicious prosecution of a civil action without probable cause. There we find no legislative change of this rule. Nor have the courts in those states made haste, because they have discovered its impolicy, to overrule a doctrine which, it has been predicted by other courts that have refused to adopt it, would clog and choke the channels of litigation with a multiplicity of suits springing up as each case was decided in favor of the

plaintiff or the defendant. These forebodings have not been realized. Nor, in our judgment, had they ever any foundation in reason or a knowledge of human nature. The suitor who has sustained the burden of one action will not assume the expense of a second suit unless he has a strong guaranty that he can convince a jury that the original action was instituted maliciously and without probable cause. In an experience of 10 years as student and practicing lawyer in the State of New York, where the English doctrine is not followed, the writer of this opinion never during that time heard of an action in that state for the malicious prosecution of a civil suit. Doubtless such suits have been brought there, but they have been very infrequent. It is safe to say that in that state not one civil suit in a thousand has been followed by an action for the malicious prosecution thereof.

Counsel for appellant, in his able and learned brief, argues that a defendant should not be accorded a remedy for the malicious prosecution of a civil action, for the reason that a plaintiff is given no remedy when he is delayed and harassed in his efforts to secure a judgment upon a valid claim by a fictitious defense maliciously interposed. Should we concede that there was no liability on the part of the defendant in the case supposed, it would by no means follow that this defect in the law should be be allowed to destroy a right of action which from time immemorial has existed, save when it has been taken away by express statute, as in the case of the statute of 52 Hen. III. But we do not concede the postulate of counsel for appellant. Legal science has not yet attained its full development. It is constantly undergoing changes. New doctrines are being established. Old rules are receiving modifications. Under altered social or economical conditions, it will often appear that the continued denial of a remedy for what was once not a serious, but which has finally become a grevious, wrong, can no longer be maintained. Moreover, a right may have lain dormant because never asserted. This affords no argument against the enforcement of such right for the first time. It is not safe to infer that because no one has

thought of seeking indemnity for the injury he has sustained by reason of the interposition, by the defendant from unjustifiable motives, of a false defense or a spurious counterclaim, therefore no remedy will in such a case be allowed by the law. On the contrary, we are strongly of the opinion that, if a defendant should force upon the plaintiff the litigation of an alleged counterclaim known by defendant to be without foundation, he would be liable for the damages caused thereby,—the liability to be enforced in a suit in the nature of an action for malicious prosecution.

Passing now from the main question of liability, it becomes necessary to refer with greater particularity to the facts. The plaintiff in this case, Kolka, employed his nephew, named Gresczykowski, to work for him upon his farm. After having labored there upwards of two years, Gresczykowski appeared at the office of the defendant, Jones, who was a collector, and placed with him for collection a claim against Kolka for his services as a farm hand. In our discussion of the facts, we shall state those which uphold the plaintiff's case; for, the jury having rendered a verdict sustaining his claim for damages, we must assume that every controverted issue was determined in his favor, so far as it is necessary to so assume in support of such verdict. This claim of Gresczykowski against Kolka appears from the testimony of Gresczykowski to have been $12, and no more. The jury were warranted in finding that Jones knew that the claim did not exceed $12, but, on the other hand, that Jones was justified in believing that Gresczykowski had some claim against Kolka; and that he did so believe, does not, in view of the evidence in the case, admit of doubt. Gresczykowski left this claim with Jones for collection. Subsequently Jones sued Kolka upon it, in the name of Gresczykowski as plaintiff; the suit being brought before a justice of the peace at Minto, Walsh County, in this state, whose name was McQuatt. On the return day of the summons the case was dismissed at the request of Jones, and at the same time he procured a new summons to be issued by the

same justice on the same claim, the second suit being likewise brought in the name of Gresczykowski. On the return day of this summons the second action was also dismissed by Jones, and subsequently a third action was brought against Kolka before a justice named Nichols, at Conway, about 20 miles further away. This third action was, like the other two, voluntarily discontinued by Jones. Without at this conjuncture adverting further to the facts, we may pause and inquire whether the first two actions were instituted by Jones in the name of Gresczykowski without probable cause. However maliciously they may have been carried on is immaterial, unless Jones was in law without probable cause for believing that they could be maintained. Jag. Torts, 625; Cooley, Torts, 208; *Crescent City Live-Stock Co.* v. *Butcher's Union Slaughterhouse Co.*, 120 U. S. 141, 7 Sup. Ct. 472; *Lacey* v. *Porter*, (Cal.) 37 Pac. Rep. 635. Probable cause is, on undisputed facts, a question of law. Of course, it is necessary, not only that there should be ground for believing that there was a cause of action, but also that the person bringing the action should have so believed in good faith. *Ball* v. *Rawles*, 93 Cal. 222, 28 Pac. Rep. 937. But whether, on conceded or established facts, the party had reasonable ground for assuming that an action would lie, is, as a general rule, a question of law. Cooley, Torts, p. 209, and cases cited; *Sartwell* v. *Parker*, 141 Mass. 405, 5 N. E. Rep. 807; I Jag. Torts, 626; *Stone* v. *Crocker*, 24 Pick. 84; *Lancaster* v. *Langston*, (Ky.) 36 S. W. Rep. 521; *Smith* v. *Munch*, (Minn.) 68 N. W. Rep. 19; *Bell* v. *Railway Co.* (N. J. Sup.) 33 Atl. Rep. 211. In this case we have no doubt that Jones was, as a matter of law, justified in believing that Gresczykowski had a valid claim against Kolka. Gresczykowski so informed him, and there was nothing about the circumstances to excite his suspicions to the contrary. Indeed, we are strongly of the opinion that Gresczykowski did have a good cause of action against Kolka. Kolka, in his testimony, says: "I owed him (Gresczykowski) nothing outside of the $12." (This is the amount that Gresczykowski claimed to Jones was owing to him.) And it appears that Kolka, subse-

quently to the commencement of the first action against him, settled with Gresczykowski, paying him this very sum of $12. We consider, too, that while the question whether a person actually believes that there is probable cause for commencing a suit is a question of fact, yet that under the evidence in this case the jury were not warranted in finding that Jones did not believe that Gresczykowski had a good claim against Kolka. The evidence satisfies us that Jones did honestly think that Kolka owed Gresczykowski something. It is apparent, therefore, that, when Jones brought the first two suits in the name of Gresczykowski, he had probable cause for so doing, and that, therefore, no action for malicious prosecution can be predicated upon the commencement and dismissal of those two actions. *Wills* v. *Noyes*, 12 Pick. 324–327. But there is ample evidence in the case to show that, before the third action was brought, Jones knew that Kolka had settled in full with Gresczykowski; and there is also sufficient evidence to prove that Jones knew that he had no title to the claim held by Gresczykowski against Kolka, but that despite this fact he caused the third action to be brought in his own name. Unlike the first two actions, the third one was commenced in the name of Jones himself, his object in so doing being very apparent. When he was informed that Kolka and Gresczykowski had settled their differences, he replied that they could not settle, because he (Jones) had an assignment of the claim. The evidence fully warranted the jury in finding that Jones, knowing that he had no right to the claim (his own testimony shows this clearly,) brought the third suit in his own name for the purpose of taking the position that he owned the claim, and that, therefore, the settlement referred to was no defense. Whether the jury found, as they were warranted in doing, that Jones sued in his own name, knowing that he had no title to the claim, or found, as they might well have found under the evidence, that Jones brought suit after he had heard that the owner of the demand had settled with the debtor, Kolka, a conclusive case of want of probable cause was made out. The attack on the verdict on the ground of

the insufficiency of the evidence to show want of probable cause is therefore unwarranted, and must be overruled. On the question of malice, the evidence is full and satisfactory. Indeed, malice may be inferred by a jury from want of probable cause. Cooley, Torts, 214; cases in note to *Ross* v. *Hixon*, (Kan. Sup.) 26 Am. St. Rep., on pp. 151, 152 (s. c., 26 Pac. Rep. 955; 1 Jag. Torts, 624; *Railroad Co.* v. *Henricks*, (Ind. App.) 40 N. E. Rep. 82. The malice necessary to sustain the action for malicious prosecution need not be ill will towards the plaintiff. Legal malice will support the action, and any unjustifiably motive constitutes legal malice. If a person knowing that a claim has been satisfied, and knowing that he never had any title thereto, brings a suit thereon in his own name, it is impossible for him to justify his conduct in law. In such a case—and the jury found that that is this case—the defendant is deemed to have been actuated by legal malice. Certainly there is ample proof of malice in this case to warrant the verdict that the prosecution was malicious. Judge Cooley says: "Legal malice is made out by showing that the proceeding was instituted from any improper or wrongful motive, and it is not essential that actual malevolence or corrupt design be shown." Cooley, Torts, side page 185. Chief Justice Shaw, in *Wills* v. *Noyes*, 12 Pick. 328, speaking of the malice necessary to be established in the action for malicious prosecution, says: "The malice necessary to be shown in order to maintain this action is not necessarily revenge, or other base and malignant passion. Whatever is done willfully and purposely, if it be at the same time wrong and unlawful, and that known to the party, is, in legal contemplation, malicious. That which is done contrary to one's own conviction of duty, or with a willful disregard of the rights of others, whether it be to compass some unlawful end, or some lawful end by unlawful means, or, in the language of the charge, to do a wrong and unlawful act, knowing it to be such, constitutes legal malice. See, also, Newell, Mal. Pros. p. 247, §§ 13, 14; 1 Jag. Torts, 614, 615; *Pace* v. *Awbrey*, (La.) 10 South. 381; *Bartlett* v. *Hawley*, (Minn.) 37 N. W. Rep.

582; *Grinnell* v. *Stewart*, 32 Barb. 550. If no presumption of malice could be deduced from the want of probable cause, yet, the commencement by Jones of an action in his own name, on a claim to which he knew he had no title, after he knew that the claim had been in law extinguished by settlement between the parties, must be deemed to have had for its object no other purpose than to so harass Kolka as to force him to pay Jones an additional sum not owing by him to Gresczykowski. This theory is much confirmed by the fact that the third suit was brought before another justice, about 20 miles away.

The following portion of the charge was excepted to: "The court instructs the jury that the bringing and dismissal of the suits in the manner which they were brought and dismissed is *prima facie* evidence of the want of probable cause, but is not conclusive evidence of the want of probable cause; and if the jury believe from all the evidence and circumstances as they exist, and, as shown by the evidence, excuse the bringing and dismissal of the cases, and there was in the defendant's mind a well-grounded belief, and that he had probable cause to believe the facts as testified to by him, then the plaintiff is not entitled to recover." We find no error in this. It is well settled that the voluntary dismissal of a suit is *prima facie* evidence of want of probable cause. *Wetmore* v. *Mellinger*, (Iowa,) 14 N. W. Rep. 722; *Burhans* v. *Sanford*, 19 Wend. 417; *Nicholson* v. *Coghill*, 4 Barn. & C. 21; *Green* v. *Cochran*, 43 Iowa, 544; Cooley, Torts, side page 185. Such dismissal, unexplained, is as cogent evidence of want of probable cause as the failure of the prosecutor in a criminal action to make out a sufficient case to satisfy a committing magistrate. And yet it has been repeatedly held that the discharge of the plaintiff in the malicious prosecution action by a committing magistrate is *prima facie* evidence of want of probable cause. Cooley, Torts, side page 184; *Bigelow* v. *Sickles*, (Wis.) 49 N. W. Rep. 106; *Barhight* v. *Tammany*, (Pa.) 28 Atl. 135; *Brown* v. *Vittur*, (La.) 17 South. 193; *Smith* v. *Association*, (N. C.) 20 S. E. Rep. 963; Newell, Mal. Pros. p. 283. But it is

urged that the statute law in this case gives the plaintiff in an action an absolute right to dimiss it at any time before it is finally disposed of, and that, therefore, such a dismissal cannot be held to constitute even *prima facie* evidence of want of probable cause. Counsel for appellant asserts that such a rule of evidence would take away the plaintiff's absolute right to dismiss his action. But the most superficial consideration of the matter will suffice to show the unsoundness of this reasoning. The rule of evidence which we uphold and apply in this case is one which creates a mere presumption. It does not purport to render illegal that which, both under the statute and at common law, is strictly lawful. If the plaintiff has probable cause for commencing his suit, the dismissal thereof will not render actionable the institution of such suit. It will merely call upon him to show that there was in fact probable cause for bringing the action. And it is entirely reasonable that the voluntary discontinuance by a party of an action which he absolutely controls should, in an action of this character, shift the burden of proof. To establish want of probable cause is to prove a negative, and it is elementary that to prove a negative requires only slight evidence. See Newell, Mal. Pros. p. 282 § 17. This principle must be kept in mind in testing the correctness of the rule we enunciate. It does not admit of doubt that evidence that one who controls an action has of his own free will discontinued it has a tendency to show that he never had faith in his action, from its inception. True it is that actions honestly commenced are often dismissed for various reasons, but it does not necessarily follow that such is the case in every instance. It is quite possible that the plaintiff abandoned his suit because he knew from the beginning that he had no case. If this is not so in a particular instance, it is peculiarly within the plaintiff's power to show the contrary. That is a fact exclusively within his own knowledge, and one which it is easy for him to prove. The other party is powerless to establish the plaintiff's motive for dismissing the case, unless he incurs all the hazzard of calling the plaintiff himself as a witness in the action. In *Nichol-*

*son* v. *Coghill,* 4 Barn. & C. 21, Judge Holroyd says: "In order to support actions of this nature, two ingredients are necessary,—malice, and the want of probable cause; and evidence must be given on the part of the plaintiff from which they may be inferred. Here I think that there was some evidence to be left to the jury, and that, in the absence of any answer to it, they were justified in finding for the plaintiff. The ground of the discontinuance was peculiarly within the knowledge of the plaintiff in the former action, and he might have proved it. In actions for a malicious prosecution it has been held that evidence of the bill having been thrown out by a grand jury is sufficient to warrant an inference of the absence of probable cause. So in this case I think that malice and the absence of probable cause may be inferred from the discontinuance; that being the act of the present defendant, and not having been explained by him." In view of the fact that in actions for malicious prosecution only slight evidence is required to make out a *prima facie* case as to want of probable cause, and of the further fact that the voluntary discontinuance of the case has some tendency to show that the plaintiff never had any faith in his action, we deem it a just and reasonable rule that proof of such voluntary discontinuance, unexplained, is sufficient to carry the case to the jury, when the ease with which the plaintiff can explain his conduct is considered in connection with the difficulty the defendant will encounter when he tries to show that the plaintiff's motive in dismissing the case was his conviction from the beginning that the action would not lie. Most of the decisions cited by counsel for the appellant on this branch of the case are not in point. In *Asevado* v. *Orr,* 100 Cal. 293, 34 Pac. Rep. 777, the court decided that the voluntary dismissal of an action by the plaintiff is not an admission of want of probable cause. No one ever supposed it was. By discontinuing his suit the plaintiff therein does not forever concede that he had no probable cause for commencing it. But this is entirely different from the question whether it is a reasonable rule to so shift the burden of the proof as to require the party who alone has knowledge

of the facts to explain his conduct, in view of the fact that such conduct does have some tendency to prove that he did not originally believe he could succeed in the case. The only adjudication we can find which is opposed to our ruling is *Smith* v. *Burrus*, (Mo. Sup.) 16 S. W. Rep. 881. All that the court in the case at bar, in substance, said, was that the voluntary dismissal of the case raised the presumption of want of probable cause. It distinctly stated in the same connection that the jury might nevertheless find that the defendant did in fact have probable cause for bringing the actions. It is true that the language of the court in charging that a *prima facie*, case had been made out by the fact of dismissal is not altogether free from criticism. But the citicism arises from the fact that the District Judge qualified the rule, and seemed to consider that other conditions must combine with the mere fact of voluntary dismissal to warrant the inference of want of probable cause. In this the court erred. But the error was not prejudicial to the defendant. If the voluntary dismissals of the cases raised the presumption of want of probable cause, it certainly was not to defendant's prejudice that the court told the jury that, in the absence of explanation by the plaintiff in the former suit, this inference arose in the case at bar, not, however, from the mere fact of voluntary dismissals alone, but from that fact when coupled with other circumstances.

During the progress of the trial the plaintiff testified that, in the defense of the actions instituted against him by Jones, he had paid $35 for attorneys' fees. This evidence was objected to on the ground that it was incompetent, irrelevant, and immaterial. The evidence having been received over objection, the defendant, after both parties had rested, moved to strike it out on the grounds that it was not proper evidence, and was incompetent, irrelevant, and immaterial. This motion was denied. It is now urged that the evidence should not have been received, for the reason that it was not shown that the fees paid by plaintiff to his attorneys were reasonable for the services rendered. It is apparent that no such point was intended to be raised by the

objection made by counsel for defendant, or by his motion to strike out the evidence. These successive attacks upon this evidence were leveled against the right of plaintiff to prove as a portion of his damages payments made by him for attorneys' services in defense of the actions referred to. That such expenditures, to the extent that they are reasonable and necessary, may be recovered in an action for malicious prosecution, is well settled. *Mitchell* v. *Davies*, (Minn.) 53 N. W. Rep. 363; *Marshall* v. *Betner*, 17 Ala. 832; *Ziegler* v. *Powell*, 54 Ind. 173;. *Gregory* v. *Chambers*, 78 Mo. 294; *Krug* v. *Ward*, 77 Ill. 603; *Walker* v. *Pittman*, 108 Ind. 341, 9 N. E. Rep. 175; *Landa* v. *Obert*, 45 Tex. 539. It is true that in the case at bar the plaintiff did not go far enough to entitle him to recover the sums paid by him for attorneys' fees. There is no evidence that the charges of his attorneys were reasonable. *Mitchell* v. *Davies*, (Minn.) 53 N. W. Rep. 363. But in proving this element of damages the plaintiff was compelled to proceed in the usual way, by establishing one fact at a time. It was entirely competent for him to prove the fact that he had paid $35 for attorneys' fees; but, to make this $35 an element in the damages which he could recover, it was necessary for him to go further, and establish the additional fact that the services of his attorneys were reasonably worth that sum. This he could not do by his own evidence, he not being qualified to testify on that subject. All he could swear to was the bare fact of payment, and his testimony in this regard was both competent and within the issues. While it is true that the plaintiff failed to supplement this evidence with the necessary proof of the reasonableness of the charges of the attorneys for the services rendered, yet this oversight on his part did not destroy either the competency or relevancy of the evidence already received. It is not a case in which there has been incompetent evidence received touching an item of damages. It is merely a case of insufficient evidence. The remedy of the suitor, under such circumstances, is to move the court to direct the jury to disregard the matter not proven. This is precisely the course pursued by the defendant's counsel

in the case of *Mitchell* v. *Davies*, (Minn.) 53 N. W. Rep. 363, cited and relied on by defendant's counsel in this case. The sufficiency of competent evidence to prove a fact cannot be challenged by a motion to strike out the evidence properly received. Neither by objecting to the admission of such evidence, nor by moving to expunge it from the record in the case, can the point be raised that it should have been supplemented by additional proof. 1 Thomp. Trials, § 717. "But, where the judge admits evidence which is in the character of a link in a chain of facts necessary to make out the case of the proponent, the mere fact that the other links are not supplied will not support an exception to its admission, since, if it were otherwise, it would result in the principle that evidence is erroneously admitted because ultimately insufficient." In any case, if evidence is properly received the party against whom it is offered has no absolute right to have it stricken out. His proper remedy is to request the court to instruct the jury to disregard it. 1 Thomp. Trials, § 716; *Gawtry* v. *Doane*, 51 N. Y. 84–90. This is true even when it appears from subsequent proof that the evidence is competent. Much more should this be the rule in cases where the subsequent developments on the trial do not establish the incompetency, but only the insufficiency, of the evidence properly received. In such a case it was competent when offered, and is still competent so far as it goes, and an attack upon it as incompetent is misconceived. It is to the interests of the party complaining that this practice should be adopted. After he has been successful in his motion that evidence be stricken out, he has no guaranty that the jury will understand that they are not to consider it in deciding the case. To secure all the protection possible under the circumstances, he is interested in having the jury told in express terms that they must not take such evidence into account in making up their verdict. Had the trial court specifically charged the jury that they might allow the item of $35 paid as attorney's fees, and had the defendant preserved an exception to such portion of the charge,

he would be in a position to insist on the point he makes. Failing to raise the point that the evidence was insufficient to warrant the jury in considering the item of $35 in fixing the plaintiff's damages, either by request to take that item from the jury, or by exception to the portion of the charge submitting it (there being no portion of the charge which relates to such item enucleated from other items of actual damage for the defendant to except to,) and no point having been made on the motion for a new trial that the evidence was insufficient to justify the verdict as to this item of damages (even assuming that it appears that the jury have allowed such item,) it follows that no question relating to the attorney's fees is before us for consideration. We have had occasion before to consider the importance of the rule of practice that a mere general objection is not sufficient to raise any question which could have been obviated had it been specifically pointed out, but no case has hitherto arisen in this state calling for its enforcement. We shall in all cases strictly enforce this highly just rule. A suitor should be fairly appraised by the language of the objection or the motion, as the case may be, just what point is made against his evidence, or what defect in proof is claimed by his antagonist, to the end that he may then and there, if possible, save himself from the consequences of error. *Lithographing Co.* v. *Falk,* 8 C. C. A. 224, 59 Fed. Rep. 707; *Bright* v. *Ecker,* (S. D.) 69 N. W. Rep. 824; *Levine* v. *Insurance Co.,* (Minn.) 68 N. W. Rep. 855; *Hawver* v. *Bell,* (N. Y. App.) 36 N. E. Rep. 6; *Ladd* v. *Sears,* 9 Or. 244; *Reab* v. *McAllister,* 8 Wend. 109; *Hooper* v. *Railway Co.* (Minn.) 33 N. W. Rep. 314; *Taylor* v. *Wendling,* (Iowa,) 24 N. W. Rep. 40; *Homestead Co.* v. *Duncombe,* (Iowa) 1 N. W. Rep. 725; *Krolik* v. *Graham,* (Mich.) 31 N. W. Rep. 307; *Warren* v. *Warren,* (Va.) 24 S. E. Rep. 913; *Manufacturing Co.* v. *Pinch,* (Mich.) 66 N. W. Rep. 340, reversing 64 N. W. Rep. 729; *Ives* v. *Leonard,* (Mich.) 15 N. W. Rep. 463; *Perkins* v. *Buaas,* (Tex. Civ. App.) 32 S. W. Rep. 240; *Ayrault* v. *Bank,* 47 N. Y. 576; *Camden* v. *Doremus,* 3 How. 530; *Stevens* v. *Hope,* (Mich.) 17 N. W. Rep. 698; *Wheaton* v. *Beecher,* (Mich.) 13 N. W. Rep.

*769;* *Daly* v. *Byrne,* 77 N. Y. 182; *Rodgers* v. *Wells,* (Mich.) 6 N. W. Rep. 860; *Lungerhausen* v. *Crittenden,* (Mich.) 61 N. W. Rep. 270; *Mining Co.* v. *Nooman,* (Dak.) 14 N. W. Rep. 426. See, also, *Bank* v. *Laughlin,* 4 N. D., 391-402, 61 N. W. Rep. 473. Had the defendant, even in his motion to strike out the evidence, or in his objection thereto, stated the ground relied on, we have no doubt but that plaintiff would have offered some evidence to show that the sum paid was reasonable, or just what portion thereof was a reasonable charge under the circumstances. We have examined the other parts of the charge to which an exception was taken, but are unable to find that there was any error therein. It is possible that in arriving at their verdict in this case the jury have allowed damages for the first two actions which we hold were lawfully commenced. But nowhere in the case does it appear that defendant sought on the trial to discriminate between his liability for the first two actions and his liability for the third. His attitude was that, if liable at all, he was liable for all. The only way in which it was possible for him to present the question he now seeks to have reviewed was by exception to the charge of the court, or by request that the court instruct the jury that there was no liability for the prosecution of the first two actions. Nothing of this kind was done by him. Had the court in express terms charged the jury that the plaintiff could recover damages for the first two actions as well as for the third, and had defendant failed to except to this charge, he could not now for the first time have raised the point. It is in practically this position that the defendant finds himself by reason of his failure to request an instruction and to except to the charge of the court on this point. We have less regret that the defendant is not in position to urge that the jury have considered the first two suits in fixing the amount of damages, in view of the comparatively small verdict which the jury rendered in this case. The malicious prostitution of legal remedies to subserve unworthy personal ends is not only an injury to the victim of the particular persecution, but also to

society at large, if it is suffered to go unwhipped of justice. If the law will not punish such conduct, public confidence in the merits of our system of jurisprudence must inevitably be shaken, and the courts themselves will seem to have forsaken their high function as protectors and vindicators of invaded rights, and to have become, instead, the accomplices of evil men.

The judgment of the District Court is affirmed. All concur. (71. N. W. Rep. 558.)